UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| LINA JOYCE REEVES,<br><br>Plaintiff,<br><br>v.<br><br>YESENIA SANCHEZ,<br><br>Defendant. | Case No. 3:23-cv-06237-LB<br><br>**ORDER DISMISSING CASE**<br><br>Re: ECF No. 9 |

## INTRODUCTION AND STATEMENT

This case involves the plaintiff's arrest on December 21, 2022, at the Oakland airport. Before her flight, three or four Alameda County deputy sheriffs allegedly detained her, said that there was a warrant for her arrest, handcuffed her, and "inserted a toy sexual object and used a "sexual subject in [her] vagina."[1] She sued the Alameda County Sheriff, claiming an unreasonable search and seizure, and also mentions a strip search when she was booked after the incident.[2] When she went to court a day or two later, she told the judge what happened. The judge charged the plaintiff with contempt and sentenced her to thirty days' jail for reporting what happened.[3] The Sheriff

---

[1] Compl. – ECF No. 1 at 4. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 5, 14–17.

[3] *Id.* at 17.

ORDER – No. 23-cv-06237-LB

moved to dismiss on the grounds that (1) there are no facts alleged about the Sheriff, and if it is a *Monell* claim, no facts support that claim, and (2) her allegations about the judge also do not state a claim against the Sheriff.[4] The court grants the motion on these grounds with leave to amend.

## STANDARD OF REVIEW

The court may dismiss the plaintiff's complaint under Rule 12(b)(6). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'ground' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves…." *NorthBay Healthcare Group, Inc.*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 889–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability

---

[4] Mot. – ECF No. 9 at 1–2.

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

Federal courts must construe pro se complaints liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). A pro se plaintiff need only provide defendants with fair notice of his claims and the grounds upon which they rest. *Hearns*, 413 F.3d at 1043. He need not plead specific legal theories so long as sufficient factual averments show that he may be entitled to some relief. *Id.* at 1041.

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Brotherhood of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

## ANALYSIS

Liberally construing the plaintiff's complaint, she asserts no claim against the Sheriff, who did not personally participation in the alleged misconduct. She also does not state a claim under *Monell*.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Alameda County cannot be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1534 (9th Cir. 1995).

To impose *Monell* entity liability under § 1983 for a violation of constitutional rights, a plaintiff must show that (1) the plaintiff possessed a constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's

constitutional right, and (4) the policy was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). A *Monell* claim can be based on any of the following theories: (1) a longstanding practice or custom, (2) the failure to adequately train, or (3) a constitutional violation committed or ratified by an official with final policy-making authority. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), overruled on other grounds by *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

There are no fact allegations supporting a *Monell* claim.

To the extent that the plaintiff challenges a state-court judge's holding her in contempt, the judge has absolute immunity from liability for damages for her decisions arising out of the exercise of her judicial functions. *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001); *Sharnese v. California*, 547 F. App'x 820, 822–23 (9th Cir. 2013). Furthermore, to the extent that the plaintiff challenges the judge's decision, she cannot do so in this lawsuit. Under the *Rooker-Feldman* doctrine, lower federal courts lack subject-matter jurisdiction to hear direct or de facto appeals from state-court judgements. *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 482 (1923); *Fowler v. Guerin*, 899 F.3d 1112, 1119 (9th Cir. 2018). Thus, the plaintiff's claim against the judge is barred from federal-court review.

Another issue is any claims against the arresting deputies. While the plaintiff does not directly name the deputies who arrested her, she alleges facts about them and may be trying to challenge their arresting her and their use of force while doing so. The following are the legal standards that would apply to such claims.

Probable cause to arrest exists when the police have, at the moment of the arrest, "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)). Probable cause is a "practical, nontechnical conception" based on a "common-sense conclusion about human behavior," and it is a "fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules."

*Illinois v. Gates*, 462 U.S. 213, 231–32 (1983) (cleaned up). Its existence is determined under the totality of the circumstances. *Id.* at 238; *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

The probable cause determination has two steps. First, the court considers the historical facts, meaning the events that occurred leading up to the arrest. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Second, the court considers whether these facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. *Id.*; *Devenpeck*, 543 U.S. at 153 (the objective standard means that the arresting officers' subjective intentions are irrelevant to the existence of probable cause). The "evidence supporting probable cause need not be admissible in court, [but] it must be legally sufficient and reliable." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 825 (9th Cir. 2013) (cleaned up).

Here, if there was a valid arrest warrant, then it is unlikely that the plaintiff can plead a claim for wrongful arrest.

The next issue is whether the deputies' use of force during the seizure was reasonable. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (cleaned up). A court must evaluate "the facts and circumstances of each particular case, including [(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The *Graham* factors are not exhaustive. *George v. Morris*, 736 F.3d 829, 837–38 (9th Cir. 2013). Because "there are no per se rules in the Fourth Amendment excessive force context," *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011), courts must "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*," *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (cleaned up). Other factors relevant to the analysis include the availability of less intrusive alternatives to the force used and giving proper warnings before using force, if feasible. *Glenn v. Washington Cnty.*, 673 F.3d 864, 872 (9th Cir. 2011).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (cleaned up). This is because "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Here, the allegations, if true, plausibly plead a claim against the individual deputies involved in the conduct. If the plaintiff wants to name them as defendants, she must say so. If she does not know their names, she can name them as Doe defendants and try to identify them during discovery. *Cf. Crowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013) ("A district court abuses its discretion by denying leave to amend where the complaint's deficiencies could be cured by naming the correct defendant.")

The interaction with the deputies also can be characterized as an unlawful seizure. U.S. Const. amend. IV; *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995). In order to claim the protection of the Fourth Amendment, one must "demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i.e.*, one which has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (cleaned up); *see also Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring) (Fourth Amendment violation occurs when government officers violate a person's "reasonable expectation of privacy").

Another issue is whether the plaintiff is claiming an unlawful strip search. The Fourth Amendment applies to the invasion of privacy in prisons. *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964, 974–75 (9th Cir. 2010) (en banc). The Fourteenth Amendment applies to a pretrial detainee's right to bodily privacy. *Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017). The principle that confinement brings about the necessary withdrawal or limitation of many privileges and rights, however, applies equally to pretrial detainees and

prisoners. *Bull*, 595 F.3d at 975. As such, prisoners and pretrial detainees in institutional settings may be subjected to strip searches and body cavity searches if they are conducted in a reasonable manner. *See Bell v. Wolfish*, 441 U.S. 520, 561 (1979).

More specifically, every detainee, regardless of the type or seriousness of the offense, who will be admitted to the general population of any prison or detention facility may be required to undergo a close visual inspection while undressed because "[c]orrectional officers have a legitimate interest, indeed a responsibility, to ensure that [facilities] are not made less secure by reasons of what new detainees may carry in on their bodies …." *See Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 321, 330–34 (2012) (holding that county's search procedures did not violate the Fourth and Fourteenth Amendments because there was a reasonable balance between inmate privacy and the needs of the institution, and rejecting petitioner's proposal — that new detainees not arrested for serious crimes or for offenses involving weapons or drugs be exempt from invasive searches unless they give officers a particular reason to suspect them of hiding contraband — as unworkable.); *but cf. Shorter v. Baca*, 895 F.3d 1176, 1188–89 (9th Cir. 2018) (holding jail officials not entitled to deference with respect to legitimate penological purpose where repeated search of detainees occurred after returning from court rather than just at admitting, and the procedures involved leaving noncompliant female inmates shackled to cell doors for hours, virtually unclothed, and without access to meals, or a toilet, while visible to both male and female guards on patrol).

Also, cross-gender body searches can implicate a plaintiff's Fourth Amendment right to be free from unreasonable searches. *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011). A court determines, on a case-by-case basis, "[w]hether a search is reasonable under the Fourth Amendment" by "'balancing … the need for the particular search against the invasion of personal rights that the search entails.'" *Id.* at 1141 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). "The required factors for courts to consider include: (1) 'the scope of a particular intrusion,' (2) 'the manner in which it is conducted,' (3) 'the justification for initiating it,' and (4) 'the place in which it is conducted.'" *Id.* (quoting *Bell*, 441 U.S. at 559). "[I]nfrequent and casual

observation, or observation at a distance, are not so degrading as to warrant court interference." *Id.* at 1142 (cleaned up).

The plaintiff did not claim an unreasonable strip search as a standalone claim. Based on the allegations in her attachment to the complaint, there likely is not a claim (assuming that the plaintiff wants to bring one).

Finally, the plaintiff did not oppose the defendant's motion to dismiss. "Ordinary pro se litigant[s], like other litigants, must comply strictly" with "all applicable procedural rules." *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007); *see, e.g.*, *Woodruff v. De Facto Barrett Daffin Frappier Treder & Weiss, LLP*, No. 21-CV-06862-SBA, 2022 WL 547114, at *2 (N.D. Cal. Jan. 10, 2022). One such rule is that the failure to oppose an argument is considered a concession of that argument. *See, e.g.*, *Narang v. Gerber Life Ins. Co.*, No. 18-CV-04500-LHK, 2018 WL 6728004, at *4 (N.D. Cal. Dec. 21, 2018) (collecting cases). Also, the court's civil rules require an opposition or statement of non-opposition. N. D. Cal. Civ. Local R. 7-3(a)–(b); *Calip v. Soc. Sec. Admin.*, No. 14-CV-02047-JD, 2014 WL 3421147, at *2 (N.D. Cal. July 14, 2014) ("A party's failure to file an opposition to a motion to dismiss in accordance with Civil Local Rules, alone, is grounds for dismissal.").

That said, the plaintiff is attempting to prosecute her case: she has asked for the U.S. Marshal to serve subpoenas for video and audio evidence,[5] and she filed her ADR certification.[6] The most efficient process is dismiss the complaint for failure to state a claim with leave to amend. Going forward, if the County files a motion to dismiss, the plaintiff must file an opposition or a statement of non-opposition or risk dismissal of her case. Also, the court can dismiss the case if the plaintiff does not prosecute it. *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (To determine whether to dismiss a claim for failure to prosecute, the court weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket;

---

[5] Mots. – ECF Nos. 14, 16. If the case proceeds past the pleadings stage, the plaintiff may ask for the videos during discovery.

[6] ADR Certification – ECF No. 17.

United States District Court
Northern District of California

(3) the risk of prejudice to the defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits.).

## CONCLUSION

The court grants the motion to dismiss with leave to amend. The plaintiff must amend her complaint by April 19, 2024.

This disposes of ECF No. 9.

**IT IS SO ORDERED.**

Dated: March 17, 2024

_____
LAUREL BEELER
United States Magistrate Judge